HOPE (COLLINGS v.). See Case No. 3,003.

## Case No. 6,679.

### HOPE et al. v. The DIDO.

[2 Paine, 243; 2 Hunt, Mer. Mag. 169.] [1]

Circuit Court, S. D. New York. Dec., 1840.

SALVAGE—WHAT CONSTITUTES—PILOTS—PILOT GROUND.

1. Whether the towing into port of a vessel exposed to the perils of the sea without a rudder, can be considered a salvage service, will depend upon whether, by the loss of her rudder, she was rendered innavigable.
[Cited in The Alaska, 23 Fed. 603, 605.]

2. Pilots may become salvors; but they must first strictly discharge their duty as pilots; and the circumstances under which they may claim to be considered as salvors, must be such as require efforts, perils to be encountered, labor or skill, out of the line of their duty. If, in such case, they act under an agreement for extra compensation, they are thereby precluded from claiming as for salvage service. Where, however, there has been extraordinary personal merit or effort, or unforeseen exertion and hazard in the performance of the service, they are not absolutely concluded by such agreement; but a court of admiralty may, in its discretion, grant them an extra allowance.
[Applied in The Warren, Case No. 17,193. Cited in Flanders v. Tripp, Id. 4,854; The Alaska, 23 Fed. 603. Approved in The Cachemire, 38 Fed. 523.]

3. The limits of pilot ground are not fixed by any rule of law, but depend upon usage or custom; and that usage is not settled and uniform, but varies according to circumstances.

This was a case in admiralty [by Edward Hope and others against the brig Dido and her cargo], tried before the district court, in which a decree was made in favor of the claimants [case unreported], and came up on

[1] [Reported by Elijah Paine, Jr., Esq. 2 Hunt, Mer. Mag. 169, contains only a partial report.]

an appeal yesterday, before the circuit court. The full particulars of the case are set forth, as below in the following.

E. Paine, for pilots.

W. Q. Morton and D. Graham, Jr., for claimants of vessel and cargo.

THOMPSON, Circuit Justice. This case comes up on appeal from the district court of the United States for the Southern district of New York. There are cross appeals. The appeal taken on the part of the claimants of the brig and cargo, is upon the ground, as is alleged, that the case as made out by the libellants, is not one entitling them to salvage compensation. And the appeal on the part of the libellants is on the ground that the libel upon the cargo was dismissed with costs. The libellants, who were pilots of the port of New York, filed their libel against the brig Dido and her cargo, claiming salvage or pilotage, or compensation out of the same, for services rendered in towing the brig into the port of New York; having taken her up about twenty-five or thirty miles from the Hook, and then being about ten miles from the shore, having lost her rudder, but had sustained no other damage whatever, and was in all other respects well found. The testimony with respect to the distance of the Dido from the Hook when she was boarded by the pilot, is somewhat at variance; but the view which I have taken of the case, does not make it necessary that I should fix with precision the place where the vessel was boarded. The position as above stated is probably correct, and at all events, is sufficiently precise for all the purposes of this opinion.

The first case that presents itself, is whether this is a case for salvage compensation for the services rendered, so as to uphold the attachment of the vessel and cargo, or either of them, to enforce payment of the compensation. As has been already observed, the only injury which the Dido had sustained, or the only peril to which she was exposed, was being to sea without a rudder—being completely manned and equipped in every other respect. And whether towing in a vessel in this situation could properly be considered a salvage service, would seem to turn upon the question, whether she was thereby rendered innavigable; if she had become innavigable, the service ought to be considered a salvage service. The towing her into port would, in such case, in all probability be saving her from shipwreck, or some impending peril, which threatened either a certain, or strongly probable loss. But if the vessel was navigable, so as to be able to avoid any threatened danger, although navigated with greater difficulty and delay, it ought not to be considered a case for salvage. I assume the principle that the libellants being pilots, forms no insuperable objection against their claiming salvage where a proper case is made out. The appropriate duty of a pilot is to navigate the vessel; and if it was innavigable, his services as pilot could not be required. But wherever pilots are permitted to become salvors, public policy requires that they should be held strictly to the discharge of their duty as pilots, before they are permitted to become salvors, as is said by Mr. Justice Wayne, in the Case of the Ship Alexander [1] referred to in the argument. That pilots must, in all cases, before they can become salvors, go to the extreme point of their duty; and the circumstances of the case in which they may claim to be considered as salvors, must obviously be such as require efforts, perils to be encountered, labor or skill out of the line of their duty; and in that case, the judge said the vessel was in imminent peril, and that the service rendered saved her from impending wreck; and this view of the cases in which pilots may become salvors is fully borne out by the case of Hobart v. Drogan, 10 Pet. [35 U. S.] 108 in the supreme court of the United States. It would be difficult to bring the case of the Dido within the rule here laid down, if the service of towing had been rendered within what was admitted clearly within pilot grounds; but that is a point in dispute, and which will be hereafter noticed. The evidence shows most satisfactorily that it was not an uncommon thing for pilots to tow in vessels for which extra pilotage or compensation was given. The district court seemed to assume that the Dido was innavigable. The vessel, says the court, "had lost her rudder, and was without any substitute by which she could be steered so as to make any given course. Her movements were fortuitous, and she required some external power to aid in bringing her within the port; and that was effected by the agency of the pilot-boat, and could have been done by any other vessel of equal power, directed by any person not a pilot." Suppose a steamboat had gone out and towed in the Dido, as the pilot-boat did. It would not have presented a case for salvage, and authorized attaching the vessel and cargo. But in the absence of any specific agreement, the compensation for the services might have been in the common law courts, or in the admiralty, by proceedings in personam.

I cannot consider this a salvage service which will subject a vessel and cargo of the value of $150,000 to admiralty proceedings in rem, exposed to all the inconvenience and expense necessarily attending such proceedings, which are strongly exemplified by this very case, where the marshal's fees alone upon the service amounted to about $1,300. All this, however, must be submitted to, if the law has provided no other redress, or the libellants have not, by their own act, waived this mode of redress, if it ever existed. The

[1] Case No. 8,153.

view which I have of this case does not require me to decide whether the service rendered was, strictly speaking, a pilotage service. To decide this point it might be necessary to settle two distinct facts, viz.: whether the libellant, Hope, entered upon the service as a pilot, and what, properly speaking, is pilot ground, or the limits within which pilots are bound to cruise. Upon both these questions there is much uncertainty from the evidence. I would, however, observe, that if Hope went on board the Dido, professing to act as a pilot, and so gave Captain Adams to understand, expecting to receive extra compensation for towing the vessel, he thereby precluded himself from claiming as for salvage service, although towing might not, strictly speaking, fall within the duty of a pilot. And this construction would be strongly fortified by the uncertainty as to the limits, properly speaking, of pilot ground; upon which point the evidence is very unsatisfactory. These limits are not fixed by any rule of law that I am aware of; it must depend upon usage or custom, and that usage does not appear to be settled and uniform, but varying according to circumstances. When there was little or no competition among pilots, these limits were contracted within a short distance, and frequently much further than the distance at which the Dido was boarded. And, indeed, the pilot in this case swears that he had often been out as far as where he boarded the Dido, cruising for vessels, and in such cases he charged extra pilotage allowed by law. The weight of evidence, I think, is, that pilot ground has been generally understood as extending three or four miles outside the bar. But I would not be understood as at all settling that question in this case. But the ground upon which I place my opinion is, that the pilot, when he entered upon the service, or at any time during its performance, did not understand, or pretend that he was acting as a salvor, or entitled to a salvage compensation; and that, even admitting that his services might have been in the nature of salvage service, he, by his agreement and course of conduct in relation to his compensation, has precluded him from now setting himself up as a salvor, and enforcing his claim in a court of admiralty by proceeding in rem. I do not mean to be understood that, if there had been any extraordinary personal merit or effort, or any unforeseen exertion and hazard in the performance of the services, that the libellants should be absolutely concluded. This might then be a question resting in the sound discretion of a court of admiralty, having in view the equity and justice of the case and the reasonableness of the compensation. But, in the absence of any such circumstances, there can be no reason why a party should not be held to a waiver of the lien. Even if it should be admitted that this might possibly be considered a salvage service, it is of a doubtful character, and cannot be viewed as one of extraordinary merit by saving the vessel and cargo from certain or even probable loss, and is not one calling upon the court, upon principles of sound public policy, to make a liberal allowance, or, in measuring the compensation, to depart from what may fairly be presumed the understanding of the parties with respect to the compensation. But there are no extraordinary or unforeseen circumstances in this case calling upon the court, upon any principles of public policy, or the abstract justice and equity of the particular case, to depart from the agreement made by the parties themselves relative to the compensation.

Thomas and Edward Hope, Capt. Adams and Mr. Boyd and several others, were present, when the master was before the board of wardens, and it was mutually agreed by all the parties that it should be left to the wardens to award the compensation the libellants should receive. It was made a question in the court below, and on the argument here, whether this was a case coming within the jurisdiction of the board of wardens, the district court considered it a case not coming within the jurisdiction of the board of wardens, because it was a case of salvage and the jurisdiction of that board extended only to cases of pilotage. And, in my view of the case, it is unimportant to decide this question, because the parties, by their acts and agreements, have mutually submitted the matter to the wardens for their decision; and it comes within the spirit of what the pilot himself says was the understanding when he entered upon the service, that if he and the captain could not agree upon the compensation, it should be submitted to some third person to decide. And the appearance and hearing before the wardens was adopting that board as the third person ultimately to decide the question; and the result of my opinion is, that the award or decision of the wardens is the compensation which the libellants are entitled to recover; and the question of costs under all the circumstances, and considering the great amount to which they have accumulated, becomes a very important point in this case.

The decree of the district court having been reversed, so far as it considers the service a salvage service, for which the vessel was liable, and is substantially affirmed so far as it dismisses the libel against the cargo, the decree of this court may be considered an affirmance in part and a reversal in part of the decree in the district court, and no cost on the appeal allowed on either side against the opposite party. And the decree of this court being in favor of the libellants for $162 50, the amount of compensation allowed by the wardens would entitle them to recover costs, had that amount not been tendered and refused by libellants. But this offer of payment will, I think, discharge them from payment of costs. And, under this

view of the case, the result will be a decree in favor of the libellants for $162 50, and in favor of the claimants for the costs in the district court on dismissing the libel against the cargo.

NOTE. In the case of The Emulous [Case No. 4,480], Judge Story, in speaking of the rate of compensation for salvage service, said: "The subject is necessarily one in which the reward must depend upon a just estimate of all the circumstances of each particular case. The court may, indeed, assign some general limits to its discretion in certain classes of cases approaching nearly to the same general average merit. For instance, it may say, and indeed it has said, that generally, in cases of derelict, it will not allow more than one-half of the value as salvage. But extraordinary cases of great danger and gallantry may occur, in which the court would even desert this rule. On the other hand, it may say, that it will not generally award less than one-eighth, (a sum fixed by statute, as a minimum in certain cases of recapture,) unless under very peculiar circumstances. Indeed, looking to the general current of decisions, it will be found, that the court have not commonly allowed less than one-third, unless where the services have been quite inconsiderable, or the amount of the property has been very great. Still, this must be subject to many qualifications; and it will be found very difficult in practice to lay down any rules which would furnish a just guide to limit the discretion of the court. The court must endeavor to work its own way through every case, upon a comprehensive survey of all the circumstances. The circumstances entitled to most consideration in all cases of salvage, are, the value of the property saved; the extent of the labor and services; and the degree of merit and gallantry in accomplishing the enterprise. The latter, in an especial manner, is looked to by the court with uncommon favor. Lord Stowell has spoken on this subject with his accustomed force and elegance. 'The principles,' says he, 'on which the court of admiralty proceeds, lead to a liberal remuneration in salvage cases; for they look, not merely to the exact quantum of service performed in the case itself, but to the general interests of the navigation and commerce of the country, which are greatly protected by exertions of this nature. The fatigue, the anxiety, the determination to encounter danger, if necessary, the spirit of adventure, the skill and dexterity, which are acquired by the exercise of that spirit, all require to be taken into consideration. What enhances the pretensions of salvors most, is the actual danger which they have incurred. The value of human life is that which is, and ought to be, principally considered in the preservation of other men's property; and, if this is shown to have been hazarded, it is most highly estimated.' On the other hand, the value of the property saved must always form a very important ingredient, since that proportion would be a very inadequate compensation in cases of small value, which would be truly liberal in others of great value. As the allowance of salvage necessarily rests very much in the discretion of the court, it is hardly possible, in many cases, that different courts, exercising independent judgment, should arrive at precisely the same conclusion. Each may exercise the most enlightened discretion; and yet, from the necessary differences of the human mind, they may differently adjust the salvage to the circumstances. On this account it has always been the disposition of the appellate courts of the United States, in all salvage cases, to discourage appeals, as mischievous and expensive to all parties. And, therefore, they generally adhere to the rate of salvage allowed in the court from which the appeal is taken, unless the evidence clearly calls for a different proportion."

## Case No. 6,680.